## O. L. LUNDSTROM v. LESTER G. MAMPLE, JR. AND ANOTHER.[1]

April 6, 1939.

No. 32,086.

[1]Reported in 285 N. W. 83.

*A. E. Haering,* for appellant.
*John J. Fahey,* for respondent.

PETERSON, JUSTICE.

This proceeding was brought to obtain a declaratory judgment construing the word "age" in 3 Mason Minn. St. 1938 Supp. § 8569, providing that the clerk of court shall not issue a marriage license to a person intending to marry if "under age" without the consent of the parent, or the guardian if there be one. The statute, so far as material here, reads as follows:

"If any person intending to marry shall be under age, and shall not have had a former husband or wife, such license shall not be issued unless the consent of the parents or guardians shall be personally given before the clerk, or certified under the hand of such parents or guardians, attested by two witnesses, one of whom shall appear before such clerk and make oath that he saw said parents or guardians subscribe, or heard them acknowledge, the same."

Defendant Mample, a male of the age of 21 years, applied to petitioner as clerk of court to issue a license for a marriage to Eleanor M. Fischer, a female of the age of 20 years. Neither of the parties intending to marry had had a former spouse. Miss Fischer's parents are alive and have not consented to the issuance of a marriage license. The clerk's reason for not issuing a license was that the word "age" as used in § 8569, *supra,* means legal age, which is 21 years for both males and females under 3 Mason Minn. St. 1938 Supp. § 8992-185, Vlasak v. Vlasak, 204 Minn. 331, 283 N. W. 489, and hence the consent of Miss Fischer's parents to the issuance of

a license was required. The court below held that the word "age" means marriageable age, not legal age, and that since males of the age of 18 and females of the age of 16 are capable in law of contracting marriage, under 2 Mason Minn. St. 1927, § 8563, the parties are entitled to a marriage license without the parental consent. The only issue is whether age for the purpose of obtaining the marriage license means the age at which the parties are capable in law of contracting marriage or the age of majority.

When considered alone, the meaning of the word "age" in the marriage license statute is ambiguous due to lack of definition of the word as there used, and the argument implied from permitting minors to marry at the ages mentioned in § 8563 that if they are old enough to marry they should be entitled to a marriage license. When considered in the light of the purpose and history of the marriage license statute it appears that age was used as meaning legal age. The statutes in nearly every state in the Union require the consent of the parents or guardian before the issuance of a marriage license to a minor. In most states the ages are specified as 21 for males and 18 for females. Browning v. Browning, 89 Kan. 98, 130 P. 852, 853, L. R. A. 1916C, 737, Ann. Cas. 1914C, 1288. In the cited case the court said:

"In forbidding the issuance of a license for the marriage of a minor without the consent of the parent or guardian the legislature is to be regarded,   *   *   *   as intending to prevent minors from the improvident exercise of the power to enter the marriage relation, rather than to deprive them of the capacity to do so."

These views are in accord with what we said in State ex rel. Scott v. Lowell, 78 Minn. 166, 80 N. W. 877, 46 L. R. A. 440, 79 A. S. R. 358, where we held that a minor under the statutory age of marriage contractual capacity, but capable of contracting marriage at common law, could contract a valid marriage without the parent's consent, which was voidable for lack of age by the minor only by judicial decree. In that case a marriage license was issued for the marriage of a man 32 years and a female 13 years and 11 months of age. In referring to our statutes relating to the marriage of

minors, we pointed out that they imposed restrictions and penalties. upon public officers and clergymen "for the purpose of preventing,. so far as possible, such marriages being solemnized; but the statute has, for wise reasons, stopped short of declaring such marriages. void." Our statute conforms to other legislation of the same kind. The original statute, L. 1849, c. 61, entitled, "An act regulating marriages," provided, in § 4, substantially the same as the present statute, § 8569, *supra,* that if any person intending to marry shall be "under age" the consent of the parents or guardians, as the case may be, should be given. Section 1 of L. 1849 fixed such age at 21 for males and 18 for females and also provided that males of the age of 18 years and females of the age of 14 years were capable in. law of contracting marriage. From 1851 to 1866 no marriage license was required, but a record of all marriages was filed with the clerk by the party solemnizing the same, who was subject to penalty by statute if he failed to make return to the clerk of the marriages performed by him. Consent of the parent or guardian to the marriage of minors "under age" was retained, and such age was specifically declared to be 21 for males and 18 for females. Such consent was required to be given to the person solemnizing the marriage in the same manner that it had previously been given to the clerk, and all persons solemnizing marriages were given the power to administer an oath for that purpose the same as the clerk. in the prior statutes. R. S. 1851, c. 65; P. S. 1849-1858, c. 52. G. S.. 1866, c. 61, retained the provisions that males of the age of 18 and females of the age of 15 shall have capacity in law to contract marriage. § 2. A marriage license was again required by § 7,. which the clerk could issue only with the consent of the parent or guardian if any person intending to marry was "under age," following the language of the 1849 act. But, unlike the law of 1849,. R. S. 1851, and P. S. 1849-1858, c. 61 of G. S. 1866 did not contain any section defining who was under age. Coincident with this. change in the statutes relating to marriage, chapter 59 was adopted, by which for the first time age was defined by statute in this state.. It defined the term "age" as 21 for males and 18 for females "for all purposes." G. S. 1866, c. 59, § 2; Vlasak v. Vlasak, 204 Minn..

331, 283 N. W. 489. The age fixed for purposes of marriage under the former statutes was thereby adopted for all purposes. It is apparent that the word "age" did not have a meaning of its own as used in any of the laws prior to 1866. It derived its meaning by reference to other sections of the statute in connection with which it was used. In the 1866 statutes as in the prior statutes, the word "age" has no definition of its own and derives its meaning solely by reference to other statutes. It refers either to marriageable age or to legal age. Since marriageable age was rejected by all the prior statutes from 1849 to 1866, it seems hardly possible that it should have been adopted by the 1866 law, especially in view of the fact that legal age was fixed by said law for all purposes at the age at which it was formerly fixed for purposes of a ceremonial marriage. It is more reasonable to suppose that the legislature intended to retain the age of 21 for males and 18 for females, and hence the expression "under age" in the statute relating to the issuance of marriage licenses relates to legal rather than to marriageable age. The statute has remained in substantially the same form ever since. The uniform practical construction of the statute has been that if either of the parties intending to marry is under legal age, the consent of the parent or guardian to the issuance of a marriage license is required. The attorney general adopted this view in construing the statute. Opinions of Attorney General, 1930, No. 306. Our conclusion is that "age" as used in § 8569 means legal age. Hence the clerk was not authorized to issue the marriage license without the consent of Miss Fischer's parents.

It is to be remembered that minors having capacity to marry at the ages mentioned are still children subject to parental control and discipline. The parental control continues until marriage. After marriage they are deemed to be emancipated from parental control not by virtue of their age but by the marriage relation, which is inconsistent with subjection to the control of the parent. State ex rel. Scott v. Lowell, *supra*. The intention of the statute is that the parent may exercise control and discipline over his

child until marriage and to that end advise him and prevent him if possible from contracting an ill-advised marriage.

Reversed.[2]

MR. JUSTICE HILTON, incapacitated by illness, took no part.

[2]Since the filing of this decision L. 1939, c. 243, has been enacted, authorizing the clerk of court to issue a marriage license to males of the age of 21 years and females of the age of 18 years.

